**Myra J. WALKER, Plaintiff–Appellant,**

v.

**NATIONSBANK OF FLORIDA N.A., a Florida Corporation, Defendant–Appellee.**

Nos. 93–3380, 94–2134.

United States Court of Appeals, Eleventh Circuit.

June 12, 1995.

John F. MacLennan, Smith, Hulsey and Busey, Jacksonville, FL, for appellant.

Richard F. Kane, Michael V. Matthews, Blakeney, Alexander and Machen, Charlotte, NC, for appellee.

Before HATCHETT and COX, Circuit Judges, and JOHNSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this sex and age discrimination case, appellant, Myra Jeanette Walker, appeals from the district court's granting of a directed verdict, pursuant to Federal Rules of Civil Procedure 50, and the awarding of attorney's fees. We affirm the directed verdict ruling, but vacate the attorney's fee ruling.

## FACTS

This case involves the employment relationship of Walker, NationsBank (the bank), and her immediate supervisor, Eugenia Sefcik. In September, 1987, the bank promoted Walker to the position of branch manager of its Baymeadows Jacksonville, Florida branch. In this new position, Walker reported directly to Sefcik.[1] Sefcik's first evaluation of Walker's job performance occurred in January, 1988, and she rated Walker at "expected" or "expected plus" in all of the areas listed on the evaluation form. At a meeting in June, 1988, Sefcik angrily accused Walker of failing to offer a Baymeadows branch employee the office manager position at another of the bank's Jacksonville, Florida, branches, and of failing to notify another Baymeadows branch employee that the employee had been denied a salary increase as a result of excessive absenteeism. At the time of this confrontation, Walker contended that she had carried out the directives as instructed.

In June, 1988, the bank conducted an audit of its three Jacksonville branches. The audit of Walker's Baymeadows branch uncovered several deficiencies, and the branch was given an overall rating of unsatisfactory.[2] In a June 24, 1988 telephone conversation, Sefcik angrily expressed to Walker her displeasure with Walker's job performance based on the results of the audit of the Baymeadows branch. Walker, in response, sent Sefcik a memorandum in which she characterized Sefcik's reaction to the Baymeadows branch's unfavorable audit as "mental harassment."

As a result of Walker's memorandum, Sefcik and Joyce Sheets, a bank personnel specialist, met with Walker on July 6, 1988. At this counseling session, Sefcik presented Walker with her concerns about Walker's substandard performance during the first six months of 1988, and also set a number of performance goals for Walker to meet in the coming months. Following this meeting, Sefcik documented Walker's performance deficiencies in a July 13, 1988 written perfor-

1. The bank operated three branches in Jacksonville, Florida: Downtown, Baymeadows, and DuPont. Sefcik, in her capacity as Metro Director, was responsible for branches in Jacksonville, Tallahassee, South Orlando, and Kissimmee, Florida.

2. The audit also uncovered deficiencies in the bank's other two Jacksonville, Florida, branches.

The auditors did not give the DuPont branch an overall rating because it was that branch's initial audit; they did, however, document several deficiencies in the DuPont branch's internal controls. At the time of the audit, Rebecca Reams, a female under the age of forty, was the branch manager. The Downtown branch that Walter Doeschler, a male under age forty, managed also received an overall rating of unsatisfactory.

mance evaluation.[3] In an August 4, 1988 memorandum, Walker responded to this performance evaluation claiming that the deficiencies cited in the branch audit had been corrected.

Walker and Sefcik also held a regularly scheduled quarterly meeting on September 19, 1988, during which Sefcik instructed Walker to contact a bank employee, Nancy Moore, to ensure that the Baymeadows branch received credit for certain referrals; Sefcik also instructed Walker to contact another bank employee, Marsha Murphy, who could answer Walker's questions concerning account analysis.

In November, 1988, the bank conducted a follow-up, pre-audit check of Walker's Baymeadows branch and found more deficiencies. On November 28, 1988, Walker and Sefcik held a conference in which Sefcik again rated Walker's performance as unsatisfactory due to Walker's failure to meet certain goals established at the July 6, 1988 meeting. As a result of the unsatisfactory rating, Sefcik placed Walker on probation for thirty days. During this period, the bank required Walker to perform satisfactorily or face immediate termination of her employment. Sefcik also provided Walker with a list of changes to be implemented at the Baymeadows branch. In a memorandum dated November 30, 1988, Walker responded to the follow-up audit's results asserting that the audit's conclusion was unfair and unfounded.

The bank contends that during the period between November 28, 1988, and Walker's dismissal on December 5, 1988, Sefcik determined that Walker had made a second misrepresentation to her: Walker had not contacted the two bank employees, Moore and Murphy, as Sefcik instructed her to do at their September 19, 1988 meeting, although Walker had told Sefcik that the directive had been carried out. Walker admits that Sefcik confronted her with the allegation that she had not contacted Moore and Murphy as instructed.

The bank scheduled Walker to attend a training class in Orlando on November 30,

1988. Due to a problem with Walker's mother's health, Walker did not attend the class. The parties dispute the extent of Walker's efforts to notify Sefcik that she would be unable to attend the training course.

Sefcik terminated Walker's employment on December 5, 1988. Sefcik stated as justification for the termination Walker's failure to notify Sefcik of the inability to attend the November 30 training course and Walker's two earlier misrepresentations that she had carried out Sefcik's directives.

## PROCEDURAL HISTORY

On January 9, 1989 Walker filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that her termination was due to her age and sex, in violation of § 703(a)(1) of Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U.S.C. § 2000e–2(a)(1), and § 4(a)(1) of the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, 29 U.S.C. § 623(a)(1). On October 4, 1990, the EEOC's Miami District Office issued a determination letter in which it found no evidence that Walker's termination had been in violation of the statutes. From that determination, Walker appealed to the EEOC headquarters in Washington, D.C.

On December 4, 1990, Walker filed suit in the United States District Court for the Middle District of Florida. The EEOC's Washington, D.C. office issued a determination letter on December 5, 1990, in which it found reasonable cause to believe that the bank had discriminated against Walker in violation of Title VII and the ADEA. The bank moved for summary judgment on November 18, 1991. On December 12, 1991, Walker sought leave to amend her complaint on the grounds that the Civil Rights Act of 1991 entitled her to a jury trial, compensatory damages, and punitive damages in connection with her sex discrimination claim. On June 12, 1992, the district court denied the bank's motion for summary judgment. In denying the bank's summary judgment motion, the district court assumed the admissibility of the EEOC de-

---

**3.** Sefcik rated Walker's performance in eight categories: Walker was rated "Expected" in one category; "Needs Improvement" in four categories; and "Unsatisfactory" in three categories.

termination letter and found that the EEOC's determination was sufficient to establish a factual issue as to whether the Bank's legitimate, non-discriminatory reason for Walker's termination was pretextual.[4] Following this court's decision in *Curtis v. Metro Ambulance Service, Inc.*, 982 F.2d 472 (11th Cir.1993), holding that the Civil Rights Act of 1991 would not be applied retroactively, the district court denied Walker's motion to amend her complaint.

On April 8, 1993, the bank filed a motion *in limine* and a supporting memorandum of law seeking to exclude the EEOC determination letter on the grounds that it was untrustworthy under Federal Rules of Evidence 803(8)(C), and unduly prejudicial under Federal Rules of Evidence 403. The district court granted the bank's motion on April 27, 1993, on the ground that the conflicting findings of the two EEOC offices would result in confusion of the issues for the jury. On May 28, 1993, the bank filed a motion for reconsideration of the district court's June 12, 1992 denial of the bank's summary judgment motion. The district court denied the bank's motion for reconsideration on September 17, 1993.

In October, 1993, the trial commenced. At the close of Walker's evidence, the court granted the bank's Federal Rules of Civil Procedure 50 motion and entered judgment against Walker as a matter of law. The district court also awarded the bank attorney's fees in excess of $50,000.

## ISSUES

Walker raises the following issues: (1) whether the district court committed error in excluding the EEOC determination letter; (2) whether the district court erred in granting the bank's rule 50 motion; and (3) whether the district court committed error in awarding the bank attorney's fees.[5]

4. At the time the district court ruled on the summary judgment motion, the bank had not sought to exclude the EEOC determination letter.

5. Walker's claim that the Civil Rights Act of 1991 should be applied retroactively to her sex dis-

## CONTENTIONS

Walker contends that the district court's exclusion of the determination letter on the ground that it would confuse the jury was error, and that the probative value of the determination letter is not substantially outweighed by the potential prejudice to the bank. The bank argues that the EEOC determination letter was properly excluded because its admission would have unduly prejudiced its defense, pursuant to rule 403.

Walker also contends that the bank's stated justification for her termination was pretextual. She argues that when she was terminated, Sefcik gave as a justification Walker's alleged misrepresentations, and her failure to provide Sefcik with advance notice of her inability to attend the November 30, 1988 training class. At trial, however, the bank contended that those two reasons justified Walker's termination and Walker's deficient job performance. According to Walker, this difference in the explanations for her termination suggests that the bank's stated reasons were pretextual, and the jury could have inferred that the real reasons for the termination were her gender and age. Walker buttresses this contention with the fact that the bank's Downtown branch also received an unsatisfactory rating; however, the branch manager, who was a male, was not disciplined. The bank contends that the record is devoid of any direct or circumstantial evidence that the bank terminated Walker's employment due to her gender or age.

Lastly, Walker argues that the district court erroneously awarded the bank attorney's fees. She argues that her lawsuit was not frivolous, and supports this contention with the undisputed fact that the court denied the bank's two summary judgment motions, with the second denial of summary judgment occurring twenty-two days prior to trial, after the district court had ruled that the EEOC letter would not be admitted into evidence. The bank argues that Walker's claim was frivolous.

crimination claim is foreclosed by the Supreme Court's recent decision in *Rivers v. Roadway Express, Inc.*, —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994).

## DISCUSSION

### A. *Admissibility of EEOC Determination Letter*

 The significance of an EEOC determination letter in employment discrimination litigation can be ascertained through a review of the role of the EEOC in the overall statutory scheme Congress enacted. Congress enacted Title VII and its progeny to assure equality of employment opportunities regardless of race, color, religion, sex, or national origin. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). To further this effort, Congress created the EEOC to investigate claims of discrimination, to institute civil actions against employers or unions, and to settle disputes through reconciliation before permitting a party to file a lawsuit. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974). Nevertheless, final responsibility for enforcement of the federal employment discrimination laws is vested in the federal courts. *Alexander,* 415 U.S. at 44, 94 S.Ct. at 1017–18. Therefore, we must remain mindful of the fact that Congress, in enacting the various employment discrimination statutes, thought it "necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum." *Alexander,* 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21.

 The admissibility of evidence is committed to the broad discretion of the district court, and the decision to exclude certain evidence will be reversed only upon a clear showing of abuse of discretion.[6] *Hines v. Brandon Steel Decks, Inc.,* 886 F.2d 299, 302 (11th Cir.1989). In this circuit, it is well established that EEOC determinations are generally admissible in bench trials. *Barfield v. Orange County,* 911 F.2d 644, 649 (11th Cir.1990) (listing cases), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991).[7] We have not seen fit, however, to apply the same liberal admissibility rule to determination letters in jury trials.[8] In particular, the distinction between a bench and a jury trial may affect the district court's analysis of a determination letter's admissibility under Federal Rules of Evidence 403.[9] *Barfield,* 911 F.2d at 651.

> The admission of an EEOC report, in certain circumstances, may be much more likely to present the danger of creating unfair prejudice in the minds of the jury than in the mind of the trial judge, who is well aware of the limits and vagaries of administrative determinations and better able to assign the report appropriate weight and no more.

*Barfield,* 911 F.2d at 651; *see also Johnson v. Yellow Freight System, Inc.,* 734 F.2d 1304, 1309 (8th Cir.) (noting that EEOC reports are not homogenous products but may vary greatly in quality and factual detail), *cert. denied,* 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984).

The district court determined that the danger that the EEOC letter would confuse the jury substantially outweighed its probative value. *See* Fed.R.Evid. 403. According to

---

**6.** In arguing the exclusion of the EEOC's Washington office determination letter, both parties briefed and argued rules 403 and 803 of the Federal Rules of Evidence. The district court's order stated that the court *considered* the bank's challenge under rule 803; however, in the next sentence the court stated that it *"applied* rule 403 and *determined that the report's probative value* was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." (Emphasis supplied.) Therefore, we analyze the district court's exclusion of the determination letter under rule 403.

**7.** Administrative findings regarding claims of discrimination are admissible in a trial *de novo* under Federal Rules of Evidence 803(8)(C), the public records and investigatory file exception to the hearsay rule. *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1960–61 n. 39, 48 L.Ed.2d 416 (1976).

**8.** Because Walker instituted suit before November 21, 1991, the effective date of the Civil Rights Act of 1991, her Title VII claim was tried to the district court, and her ADEA claim was tried to a jury.

**9.** Fed.R.Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

the district court, the determination letter's admission would force the jury to resolve the conflict between the EEOC's Miami district office's finding that the bank had not discriminated against Walker in terminating her employment and the EEOC's Washington, D.C. office's finding that reasonable cause existed to believe that the bank discriminated against Walker. The district court was concerned that the determination letter's admission would shift the jury's focus from deciding the ultimate issue in the case—whether the bank discriminated against Walker—to resolving the conflicting findings of two administrative officials who reviewed the same facts.

■ This case presents one example of the vagaries of administrative determinations which the *Barfield* court identified: two government officials knowledgeable in the area of employment discrimination law reached different conclusions after independently reviewing the same facts. The district court was properly concerned that admitting the determination letter would shift the jury's focus away from the issue of whether the bank considered a prohibited factor in terminating Walker, and towards resolving questions concerning the procedural adequacy of the investigation the two administrative hearing officers conducted. We cannot conclude that the trial court abused its discretion when it decided that the danger of confusing the issues to the jury substantially outweighed the admittedly probative value of the EEOC determination.

### B. Directed Verdict

■ In reviewing the district court's disposition of a motion for directed verdict, we employ the same standard as the district court used in determining whether to grant the motion. *MacPherson v. University of*

*Montevallo,* 922 F.2d 766, 770 (11th Cir. 1991). We review all of the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the non-moving party. *MacPherson,* 922 F.2d at 770. If the facts and inferences are so strong and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the grant of a directed verdict is proper. *Verbraeken v. Westinghouse Electric Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969)), *cert. dismissed,* 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990). If, however, substantial evidence is presented opposed to the motion, and this evidence is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied. *Verbraeken,* 881 F.2d at 1045. Nevertheless, a jury question does not exist because of the presence of a "mere scintilla of evidence"; rather, "[t]here must be a conflict in substantial evidence to create a jury question." *Verbraeken,* 881 F.2d at 1045.

■ Title VII proscribes discrimination on the basis of sex in a variety of employment practices.[10] The ADEA proscribes age discrimination in the employment of persons at least forty years of age. 29 U.S.C. § 621 *et seq.*[11] Because Walker bears the ultimate burden of proving that age and/or sex was a determining factor in the bank's decision to terminate her employment, she must first establish a prima facie case of discrimination. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). She may do so through presentation of evidence on one of three accepted methods: direct evidence of discriminatory intent; statistical evidence; or the

---

10. Section 703(a)(1) of the Civil Rights Act of 1964 provides:

"It shall be an unlawful employment practice for an employer—
 (1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...."
42 U.S.C.A. § 2000e–2(a).

11. Section 4(a)(1) of the Age Discrimination in Employment Act of 1967 provides:

"It shall be unlawful for an employer—
 (1) ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."
29 U.S.C.A. § 623(a).

four-pronged test set out in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) which allows her to present circumstantial evidence that raises a rebuttable presumption of intentional discrimination. *Carter*, 870 F.2d at 581. This case concerns only the third method of proof.

This circuit has adapted the principles governing the order and allocation of proof in cases arising under Title VII to claims of age discrimination. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.1993). The analytical structure for evaluating a claim of sex-based discrimination under Title VII is provided in Supreme Court cases such as *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community of Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994). Under the *McDonnell Douglas/Burdine* formulation, a plaintiff must carry the initial burden of establishing a prima facie case of sex discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce some "legitimate, nondiscriminatory reason" for the adverse employment decision. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. Because the defendant need only produce, not prove, a nondiscriminatory reason, this burden is "exceedingly light." *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983). Once the defendant carries the burden of production, the plaintiff must prove through presentation of a preponderance of the evidence that the employer had a discriminatory intent. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

An employee establishes a prima facie case of discrimination in termination when the employee shows (1) membership in a protected class, (2) qualification for the position held, (3) termination, (4) and replacement with a person outside the protected class. *Rollins v. TechSOUTH, Inc.*, 833 F.2d 1525, 1532 n. 14 (11th Cir.1987). The bank does not dispute Walker's qualifications for the branch manager position, and the bank replaced her with a 24-year-old male; therefore, reviewing the evidence in the light most favorable to Walker, as we must, we find that she established a prima facie case of sex and age discrimination.[12]

Because Walker established a prima facie case under *McDonnell Douglas*, the burden shifted to the bank to articulate a legitimate, nondiscriminatory reason for Walker's termination. The bank pressed three legitimate business reasons for Walker's termination. First, Walker failed to follow certain of Sefcik's directives: She did not offer a Baymeadows branch employee the office manager position at another of the bank's Jacksonville, Florida, branches; she did not notify a Baymeadows branch employee that the employee's salary increase had been deferred due to excessive absenteeism; and, she did not contact bank employees Moore and Murphy as Sefcik had instructed her to during their September, 1988 meeting. Second, the bank alleged that Walker misrepresented to Sefcik that the above-mentioned directives had been carried out. Third, the bank pointed to the deficiencies which were noted in the two audits of the Baymeadows branch as proof that Walker failed to adequately perform her duties as the Baymeadows branch manager. These allegations raised a genuine issue of fact as to whether the bank discriminated against Walker; the bank, therefore, met its burden of production. *See Reynolds v. CLP Corp.*, 812 F.2d 671, 674 (11th Cir.1987). Walker then had to carry the ultimate burden of persuading the trier of fact through a preponderance of the evidence that the bank intentionally discriminated against her. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–95.

**12.** Our cases have repeatedly stressed that an overly strict formulation of the elements of a prima facie case is to be avoided. *See, e.g., Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir.1989) (age discrimination plaintiff's inability to show that she was replaced by someone outside of the protected class not an absolute bar to the establishment of a prima facie case). Whether a prima facie case has been established is a fact specific inquiry: Would an ordinary person reasonably infer discrimination if the facts presented remained unrebutted? *Carter*, 870 F.2d at 583.

The Supreme Court recently clarified the Title VII disparate treatment framework in *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In our earlier cases, once the defendant met its burden of production and rebutted the plaintiff's prima facie case, the plaintiff could carry the ultimate burden of persuasion either with evidence demonstrating that the defendant was more likely than not motivated through a discriminatory reason or that the defendant's nondiscriminatory reason was not worthy of belief. *See, e.g., Caban–Wheeler v. Elsea*, 904 F.2d 1549 (11th Cir.1990). *Hicks* makes clear that the fact-finder's disbelief of the reasons the defendant offers does not compel judgment for the plaintiff. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2749. Rather, once the defendant has met its burden of production, the *McDonnell Douglas/Burdine* framework becomes irrelevant; the sole inquiry is whether the plaintiff successfully carries the burden of persuading the trier of fact that the defendant engaged in intentional discrimination on the basis of a prohibited factor. *Hicks*, —— U.S. —— ——, 113 S.Ct. at 2747–48. *Hicks*, however, does not stand for the proposition that the fact-finder's rejection of the defendant's proffered reasons is of no probative value in resolving the ultimate question of whether the defendant has engaged in intentional discrimination. "The fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Hicks*, —— U.S. ——, 113 S.Ct. at 2749.

In this appeal, Walker presents several arguments in support of her assertion that the bank intentionally discriminated against her on the basis of age and sex. First, she attacks Sefcik's credibility. Resolving such credibility determinations is, of course, beyond the purview of the appellate courts. *Reynolds*, 812 F.2d at 675. We are bound to determine the issues based on the record made in the district court. In any event, we review the evidence in the light most favorable to Walker. Therefore, we assume the following: Walker offered the Baymeadows branch employee the office manager position at another of the bank's branches; Walker notified another Baymeadows branch employee that the employee's salary increase had been deferred due to excessive absenteeism; Walker contacted bank employees Moore and Murphy as she had been instructed; Walker did not misrepresent to Sefcik that she had carried out Sefcik's directives; and, Walker made sufficient efforts to notify Sefcik in advance that she would be unable to attend the November 1988 training class.

The second prong of Walker's attack on the bank's proffered reasons for her dismissal is an attempt to mitigate the probative value of the Baymeadows branch's two unfavorable audits. Walker alleges that Doeschler, the bank's Downtown branch manager, who was a male under the age of forty, and whose branch received an unfavorable audit, was not disciplined as a result of the unfavorable audit. The bank disputes whether Doeschler was the manager of the Downtown branch at the time of the audit. Our review of the record, in the light most favorable to Walker, suggests that Doeschler was the manager of the Downtown branch at the time of the unfavorable audit.[13] This evidence of the bank's different treatment of similarly situated branch managers is of probative value in determining whether the bank intentionally discriminated against Walker. Walker also alleges that the bank did not provide her with training which it provided the other two branch managers and her replacement, all of whom were outside the protected class. Nevertheless, our review of the record in the light most favorable to Walker convinces us that Walker did not prove that the bank intentionally discriminated against her on the basis of her age or sex.

---

**13.** The Downtown branch's office manager testified that Doeschler was the branch manager at the time of the audit. Furthermore, it was the bank's policy to send a copy of the portion of the audit dealing with each branch to that branch's manager. The audit routing sheet listed Doeschler as the only Downtown branch personnel who received a copy of that branch's audit results.

Walker did not produce evidence that raised a suspicion of mendacity sufficient to permit us to find on this record that the bank intentionally discriminated against her on the basis of her age and/or sex. The record raises a suspicion of mendacity, but suspicion will not allow Walker to prevail under Title VII or the ADEA. As the district court noted, "[o]bviously, there is some bad blood between Miss Sefcik and Mrs. Walker." As the district court further pointed out, "[perhaps] Miss Sefcik just didn't like [Walker]." At the very least, the record makes it clear that Sefcik and Walker's relationship was extremely strained. Walker, however, has not demonstrated that age or sex motivated the bank's termination decision.

"The ultimate question [is] discrimination *vel non.*" *Hicks,* —— U.S. ——, 113 S.Ct. at 2753. Serious personality clashes may be an unwelcome reality of the workplace, and may lead, as in this case, to unfortunate consequences for employees such as Walker. Nevertheless, such clashes do not, without more, form the basis for relief under Title VII or the ADEA. Reasonable and fair-minded persons, in the exercise of impartial judgment, would not conclude that the bank had discriminated against Walker on either the basis of her age or sex. We therefore affirm the district court's entry of a directed verdict in favor of the bank.

### C. Attorney's Fees

Lastly, Walker attacks the district court's award of attorney's fees to the bank as a prevailing defendant under Title VII. Although the district court did not find that Walker's Title VII claim was frivolous, the district court awarded the bank attorney's fees on the grounds that Walker maintained the Title VII claim after it became clear that it was unreasonable and groundless, and "lacked any shred of credibility." In view of our affirmance of the district court's directed verdict in favor of the bank, we can understand the court's inclination to find Walker's Title VII claim unreasonable. Nevertheless, we must review the award of attorney's fees against the standards established in the applicable case law. *See Sullivan v. School Board of Pinellas County,* 773 F.2d 1182, 1188 (11th Cir.1985).

It is within the discretion of a district court to award attorney's fees to a prevailing defendant in a Title VII action upon a finding that the action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The standard has been described as a "stringent" one. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980).[14] Moreover, the Supreme Court has cautioned that in applying these criteria, the district court should resist the temptation to conclude that because a plaintiff did not ultimately prevail, the action must have been unreasonable or without foundation. *Christiansburg Garment,* 434 U.S. at 421-22, 98 S.Ct. at 700-01. Therefore, in determining whether a prevailing defendant is entitled to attorney's fees under Title VII, the district court must focus on the question of whether the case is seriously lacking in arguable merit. *See Sullivan,* 773 F.2d at 1189.[15]

---

**14.** *Hughes* involved the award of attorney's fees to prevailing defendants in 42 U.S.C. § 1983 actions. The Court adopted the same standard which governs the award of attorney's fees to prevailing defendants in Title VII actions on the grounds that it could find "no reason for applying a less stringent standard." *Hughes,* 449 U.S. at 14, 101 S.Ct. at 178.

**15.** In *Sullivan,* the district court *sua sponte* found the plaintiff's suit frivolous and invited the defendant to seek attorney's fees. The district court in this case premised the award of attorney's fees upon a finding that Walker maintained her Title VII suit "after it became clear that it was unreasonable and groundless." *Christians-*

*burg Garment* provides three alternative grounds which may support a district court's award of attorney's fees to a prevailing defendant: "frivolous, unreasonable, or without foundation." 434 U.S. at 421, 98 S.Ct. at 700. However, in *Sullivan,* we stated: "In determining whether a suit is frivolous, a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation...." *Sullivan,* 773 F.2d at 1189 (internal quotations omitted) (quoting *Jones v. Texas Tech University,* 656 F.2d 1137, 1145 (5th Cir.1981)).

Thus, *Sullivan* suggests that the legal standard for determining the frivolousness of a Title VII plaintiff's suit is coterminous with the legal standard for determining whether a plaintiff's suit

Although determinations regarding the presence of any or all of the three *Christiansburg Garment* factors are to be made on a case-by-case basis, our cases have identified three general factors which should guide the inquiry: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Sullivan,* 773 F.2d at 1189. Applying these standards to this case, we find that it was an abuse of discretion for the district court to award the bank attorney's fees.

Although it is clear that the record supports the district court's decision on the merits of Walker's claims, we cannot conclude that her suit is so "patently devoid of merit" as to support a finding that its continued prosecution was unreasonable. *See Sullivan,* 773 F.2d at 1189. Our application of *Sullivan*'s three general factors to the facts of this case support our holding. We note that Walker has established a prima facie case of both age and sex discrimination, that the district court found no references in the record to any settlement negotiations between the parties, and that the district court denied the bank's two summary judgment motions and allowed the case to proceed to trial. Additionally, Walker presented evidence that Doeschler, the bank's Downtown branch manager, who was male and under forty, and whose branch also received an unfavorable audit, was not disciplined. Walker also presented evidence that at least some of Sefcik's allegations against her were unwarranted.

Although the award of attorney's fees was premised on a finding that Walker continued her Title VII suit after it became clear that it was unreasonable and groundless, the district court "[could not] determine a precise point as to when the plaintiff should have considered discontinuing [the] litigation." We have held that a plaintiff's claim should not be considered groundless or without foundation for the purpose of awarding fees to a prevailing defendant when the claims are meritorious enough to receive careful atten-

tion and review. *Busby v. City of Orlando,* 931 F.2d 764, 787 (11th Cir.1991) (citing *O'Neal v. Dekalb County, Georgia,* 850 F.2d 653, 658 (11th Cir.1988)). This case merited careful review. For example, after the bank took issue with Walker's allegations, the district court on two separate occasions denied the bank's summary judgment motions. The second denial occurred twenty-two days prior to trial and after the court had decided to exclude the EEOC determination letter. Thus, the court believed that even after the exclusion of the EEOC letter, a genuine issue of material fact remained as to whether the bank had pretextually terminated Walker's employment. Finally, the policy consideration which underlies the stringent standard governing the award of attorney's fees to prevailing defendants militates against awarding fees in this case: "Assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." *Christiansburg Garment,* 434 U.S. at 422, 98 S.Ct. at 701.

As we stated earlier, determinations regarding the presence of any or all of the three *Christiansburg Garment* criteria are to be made on a case-by-case basis. We hold that on the facts of this case Walker's continued prosecution of her Title VII lawsuit cannot support an award of attorney's fees against her.

## CONCLUSION

Accordingly, the judgment of the district court is affirmed, except insofar as it found appellant's continued prosecution of her Title VII claim unreasonable and awarded the bank attorney's fees. The award of attorney's fees in favor of the bank is vacated.

**AFFIRMED IN PART AND VACATED IN PART.**

---

was unreasonable or without foundation. Moreover, the policy considerations which underlie the *Christiansburg Garment* Court's hesitancy to award attorney's fees to prevailing defendants

make it inevitable that the legal standards for the three *Christiansburg Garment* criteria should be substantially similar, if not identical. We, therefore, apply *Sullivan*'s reasoning to this case.

JOHNSON, Senior Circuit Judge, specially concurring:

I concur in the portions of Judge Hatchett's opinion which concern the admissibility of the EEOC determination and the award of attorneys' fees. I cannot, however, concur in Judge Hatchett's holding that a plaintiff, after making a showing by substantial evidence that an employer's proffered nondiscriminatory reasons are unworthy of credence, must offer additional indicia of mendacity to reach a jury on the issue of intentional discrimination. In my view, Judge Hatchett's holding improperly heightens the burden of proof that a plaintiff must sustain to prevail on a disparate treatment claim under the framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. Nonetheless, because I believe that there was insufficient evidence in this case for a reasonable person to find that the employer's proffered reasons were unworthy of credence, I concur in the result reached by Judge Hatchett and Judge Cox on this issue.

*Discussion*

As Judge Hatchett explains, the framework articulated by the Supreme Court in *McDonnell Douglas* and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) governs in disparate treatment cases brought under Title VII and the ADEA. Where an employee makes a prima facie case of discrimination, a presumption of discrimination arises. *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The intermediate burden of production then shifts to the employer to articulate a legitimate, non-discriminatory explanation for the employment decision. *Id.* Where the employer meets his burden of articulating a legitimate, nondiscriminatory reason, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Hicks*, —— U.S. at ——, 113 S.Ct. at 2749.

The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture. The defendant's production (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against [him] because of an illegitimate reason.

*Id.*

It is uncontroverted that Appellant has made a prima facie case of employment discrimination and that NationsBank has proffered nondiscriminatory reasons for Appellant's dismissal. Thus, the question in this case is whether the district court properly concluded that no reasonable person could find that NationsBank intentionally discriminated against Appellant. The answer to this question rests on two subsidiary issues: (1) whether Appellant's evidence was sufficient for a reasonable juror to disbelieve that NationsBank's proffered reasons motivated her termination—that is, whether there was sufficient evidence that the proffered reasons were pretextual—and (2) if there was sufficient evidence of pretext, whether disbelief of NationsBank's proffered reasons in combination with a prima facie case is sufficient evidence to create a jury question on intentional discrimination.

In granting judgment as a matter of law to NationsBank, the district court found that "assuming that [the performance-related reasons proffered by NationsBank are] pretextual, you still have to have some evidence that age or gender had some bearing on the decision to terminate the employee." The district court reasoned that, even if NationsBank lied when it offered its reasons for Appellant's termination, the motivation behind the lie was equally likely to have been to conceal personal animosity as to conceal illicit discrimination. Judge Hatchett adopts the district court's reasoning and, thus, never directly addresses whether Appellant has shown pretext.[1]

---

1. Although Judge Hatchett never actually states that Appellant presented sufficient evidence for a factfinder to disbelieve NationsBank's proffered reasons, I cannot discern any other way to understand his opinion. If it were otherwise, his discussion of the probative value of a factfinder's rejection of an employer's proffered reasons would be entirely superfluous.

## A. *Proof of Intentional Discrimination*

As Judge Hatchett only focuses on the second issue, I begin my discussion there. Judge Hatchett implicitly holds that evidence of pretext in combination with a prima facie case is not sufficient evidence of discrimination to reach the jury. I believe that this holding is belied by the explicit statement in *Hicks* that upon rejection of defendant's proffered reasons, "no additional proof of discrimination is required." —— U.S. at ——, 113 S.Ct. at 2749.

Prior to *Hicks*, federal circuit courts were divided about the effect of a finding that the employer's explanation was false. In what was dubbed the "pretext-only" view, the majority of circuits held that a showing that the employer's proffered explanation was false *mandated* judgment for the *plaintiff*. *See Hicks*, —— U.S. at ——, 113 S.Ct. at 2750 (cataloguing cases).[2] In contrast, "pretext-plus" circuits held that to prevail, the plaintiff must offer evidence of discrimination in addition to pretext, such that if a plaintiff could do no more than show that the employer's proffered reasons were unworthy of credence, judgment for the *employer* was *mandated*. *Id.*

*Hicks* presented the Supreme Court with an opportunity to resolve this circuit split. At the conclusion of a bench trial, the district court in *Hicks* entered judgment in favor of the employer despite evidence offered by the plaintiff that the reasons proffered by the employer were not the basis for the plaintiff's dismissal. *Hicks v. St. Mary's Honor Ctr.*, 756 F.Supp. 1244, 1252 (E.D.Mo.1991). As in the case before us, the district court interposed its own explanation for Hicks' dismissal, implicitly finding that the dismissal was the product of personal animus between Hicks and his employer. *See Hicks*, —— U.S. at ——, 113 S.Ct. at 2748 (citing 756 F.Supp. at 1252). Applying the pretext-only view, the Eighth Circuit reversed. *Hicks v. St. Mary's Honor Ctr.*, 970 F.2d 487, 492–93 (8th Cir.1992), *rev'd*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In reversing the Eighth Circuit, the Supreme Court clearly rejected the pretext-only view. The Court held that where the plaintiff relies solely on evidence that the reasons proffered by the employer are false, the plaintiff retains the burden of persuading the factfinder that the false reasons proffered are a pretext *for* illegitimate discriminatory motives. *Id.* at ——, 113 S.Ct. at 2752. However, the Court also rejected the pretext-plus position. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123–24 (7th Cir.1994) (explaining *Hicks'* holding). The *Hicks* Court explained that:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. *Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is required."*

*Hicks*, —— U.S. at ——, 113 S.Ct. at 2749 (emphasis added). In this middle ground between the pretext-plus and pretext-only positions, *Hicks* leaves unresolved whether, where the plaintiff has supplied sufficient evidence for a jury to disbelieve the reasons proffered by the employer, a judge may find as a matter of law that the evidence is insufficient for a reasonable jury to infer discriminatory intent.

A review of cases decided after *Hicks* illustrates the uncertainty that *Hicks* has generated in the lower federal courts. For example, courts have divided over the propriety of granting summary judgment where there is a genuine issue of fact regarding the truth of the legitimate reasons proffered by the employer. *Compare Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16 (1st Cir.1994) (though plaintiff created genuine issue of fact on question of whether employer's proffered reasons were pretextual, summary judgment for employer appropriate where court finds that no reasonable juror could infer discrimi-

---

**2.** *See generally* Catherine J. Lanctot, *The Defendant Lies and the Plaintiff Loses: The Fallacy of* the *"Pretext Plus" Rule in Employment Discrimination Cases*, 43 Hastings L.J. 57, 71–97 (1991).

natory intent from evidence of pretext), *cert. denied,* —— U.S. ——, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995),[3] *with Courtney v. Biosound, Inc.,* 42 F.3d 414, 424 n. 4 (7th Cir. 1994) ("implicit in [*Hicks'*] holding is that once the plaintiff has cast doubt on the employer's proffered reasons, the issue of whether the employer had discriminated against the plaintiff is to be determined by the jury not the court").[4] *See generally, Waldron v. SL Industries, Inc.,* 849 F.Supp. 996 n. 11 (D.N.J.1994) (discussing the circuit split).

In the context of summary judgment, this Circuit has adopted a narrow view of a court's role in evaluating the inference to be drawn from evidence of pretext. *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir.1994); *Batey v. Stone,* 24 F.3d 1330 (11th Cir.1994). In *Batey,* this Court reversed the district court's grant of summary judgment for the defendant-employer where there was sufficient evidence for the factfinder to disbelieve the legitimate reasons for the employment decision proffered by the employer. 24 F.3d at 1335–36. The Court noted that, under *Hicks,* evidence of pretext plus a prima facie case is sufficient to create a genuine issue of fact regarding intentional discrimination and, therefore, preclude summary judgment. *Id.* Similarly, in *Howard,* this Court found that evidence indicating that the employer's proffered legitimate reasons were false precluded summary judgment because "the fact finder's rejection of defendant's proffered reasons is sufficient circumstantial evidence upon which

to base a judgment for the plaintiff." 32 F.3d at 527.

Thus, the proper inquiry in this case is whether *Batey*'s and *Howard*'s reasoning in the summary judgment context should be extended to limit the scope of a judge's review of the sufficiency of the evidence in a jury trial.[5] Although circumstances precluding summary judgment do not necessarily preclude judgment as a matter of law, *see, e.g., American Sav. & Loan Assoc. of Florida v. Pembroke Lakes Regional Ctr. Assocs., Ltd.,* 908 F.2d 885, 888 n. 5 (11th Cir.1990), Judge Hatchett never explains what warrants differential treatment of the plaintiff's burden in these two contexts. Contrary to the position adopted by Judge Hatchett, I believe that the reasoning underlying *Batey* and *Howard* apply with equal force in the context of Rule 50 motions.

Courts must, of course, make all "reasonable inferences most favorable to the party opposed to the motion" when reviewing a motion for judgment as a matter of law. *Walls v. Button Gwinnett Bancorp, Inc.,* 1 F.3d 1198, 1200 (11th Cir.1993). The crucial premise underlying our decisions in *Batey* and *Howard* is that it is reasonable for a factfinder to infer an improper discriminatory motive from the fact that an employer has proffered false reasons. *Batey,* 24 F.3d at 1334–36; *Howard,* 32 F.3d at 527. Accordingly, because such an inference is reasonable, the court, when considering a motion

3. *See also Theard v. Glaxo, Inc.,* 47 F.3d 676, 680 (4th Cir.1995); *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 n. 3 (1st Cir.1994); *Bodenheimer v. PPG Indus. Inc.,* 5 F.3d 955, 959 n. 8 (5th Cir.1993).

4. *See also Sempier v. Johnson & Higgens,* 45 F.3d 724, 730–31 (3rd Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2611, —— L.Ed.2d —— (1995); *Anderson,* 13 F.3d at 1124; *Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir.1993).

5. Other circuit courts have split on whether a plaintiff relying solely on evidence of pretext to prove discrimination has necessarily provided sufficient evidence to preclude granting a Rule 50 motion for the defendant. *Compare Barbour v. Merrill,* 48 F.3d 1270, 1277 (D.C.Cir.1995) (a plaintiff presents sufficient evidence to support a verdict by establishing a prima facie case and introducing evidence sufficient to discredit the

employer's proffered nondiscriminatory reasons), *and E.E.O.C. v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2nd Cir.1994) ("a finding of pretextuality allows a juror to reject a defendant's proffered reasons for a challenged employment action and thus permits the ultimate inference of discrimination"), *and Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1109 (8th Cir.) ("if (1) the elements of a prima facie case are present, and (2) there exists sufficient evidence for a reasonable jury to reject the defendant's proffered reasons for its actions, then the evidence is sufficient to allow the jury to determine whether intentional discrimination has occurred"), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *with Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 801 (8th Cir.1994) ("evidence discrediting an employer's nondiscriminatory explanation is not necessarily sufficient" for a jury to find discrimination), *and Rhodes v. Guiberson Oil Tools,* 39 F.3d 537, 541–44 (5th Cir.1994) (same), *reh'g en banc granted,* 49 F.3d 127 (5th Cir.1995).

for judgment as a matter of law in an employment discrimination case, is bound to make that inference in favor of the party opposing the motion.

Because evidence of invidious discrimination will not generally be preserved in the files of the employer, determination of an employer's mental process in making an employment decision will generally be difficult. *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). To facilitate the truth-seeking process, the employer has the exceedingly light burden of proffering reasons for its employment decision and, thereby, narrowing the inquiry. *Id.* If the employer fails to state truthfully the basis for its employment decision, one reasonable explanation is that the employer is attempting to hide an illegal reason. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.") (emphasis in original). *See also Hawkins v. Ceco Corp.*, 883 F.2d 977, 981 (11th Cir.1989). Though the burden of proving discriminatory intent rests with the plaintiff, a plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence.*" *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (1981) (emphasis added).[6]

I do not believe that *Hicks* disturbs this precedent. —— U.S. at ——, 113 S.Ct. at 2751–53. Rather, the better reading of *Hicks* is that it "clarified that the only effect of the employer's nondiscriminatory explanation is to convert the inference of discrimination based upon the plaintiff's prima facie case from a mandatory one which the jury *must* draw, to a permissive one the jury *may*

draw, *provided* that the jury finds the employer's explanation 'unworthy' of belief." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir.1994) (emphasis in original). *See also Rhodes*, 39 F.3d at 549–52 (Garza, J. dissenting). Thus, to reach a jury, a plaintiff need not supply "any additional proof of discrimination" where the factfinder rejects the employer's proffered reasons, *Hicks*, —— U.S. at ——, 113 S.Ct. at 2749, because "rejection of the defendant's proffered reasons is enough to sustain a finding of discrimination." *Id.*, —— U.S. at —— n. 4, 113 S.Ct at 2749 n. 4.

In this case, the district court and Judge Hatchett exceed their proper roles by deciding whether evidence of pretext supports an inference of intentional discrimination. Absent direct evidence of illegitimate bias, the source of an employer's hostility toward an employee is inevitably opaque. Once the factfinder concludes that the employer's proffered reason is false, it must determine whether the employer has lied to hide an illegal or merely an unsavory reason. *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990). To make this determination, the factfinder must evaluate the credibility of the witnesses and the weight of the evidence. This task is peculiarly the province of the jury. *See Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir.1988) ("[a]ssessing the weight of the evidence and credibility of witnesses is reserved for the trier of fact"). *See also Ethan Allen*, 44 F.3d at 120 (the inference to be drawn from the finding that the employer's proffered reason is unworthy of credence is "better left for the jury to resolve"). As Judge Posner has explained:

> If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one such as age, may rationally be drawn. This is the common sense behind the rule of *McDonnell Douglas*. It is important to understand however that the inference is not compelled. The trier of fact must decide after a trial whether to draw the inference. The lie may be concealing a reason that is shameful or stupid but not

6. *Hicks* clarified that, while this quoted passage from *Burdine* suggests the pretext-only view, the better reading of it is that disproof of the employ-er's reason is an auxiliary to direct evidence for proving unlawful intent. *Hicks*, —— U.S. at ——–——, 113 S.Ct. at 2752–53.

proscribed, in which event there is no liability. *The point is only that if the inference of improper motive can be drawn, there must be a trial.*

*Shager,* 913 F.2d at 401 (emphasis added).

Thus, a plaintiff, who has supplied sufficient evidence for a reasonable person to disbelieve the reasons proffered by an employer, is entitled to get a jury determination on the issue of discrimination. Accordingly, I believe that if Appellant provided sufficient evidence of pretext—a proposition which Judge Hatchett apparently assumes—then judgment as a matter of law in favor of the bank was error.

### B. *Proof of Pretext*

There is, however, a threshold issue that neither the district court nor Judge Hatchett resolves: whether Appellant did in fact present sufficient evidence for a reasonable juror to conclude that NationsBank's proffered reasons were unworthy of credence. Because I believe that there was insufficient evidence for a reasonable juror to reach this conclusion, I would affirm the district court's grant of judgment as a matter of law on this ground.

A plaintiff, relying on evidence that the employer's proffered reasons are unworthy of credence as the basis for an inference of intentional discrimination, will obviously only succeed if there is sufficient evidence for a reasonable person to conclude that the employer's proffered reasons were not the basis for the employment decision. *Fuentes v. Perskie,* 32 F.3d 759, 764–65 (3rd Cir.1994); *Manzer,* 29 F.3d at 1083; *Kralman v. Illinois Dep't of Veterans' Affairs,* 23 F.3d 150, 156–57 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994). To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the em-

ployment decision. *Manzer,* 29 F.3d at 1084; *McNabola v. Chicago Transit Authority,* 10 F.3d 501 (7th Cir.1993).

In this case, NationsBank proffered numerous performance-related reasons for its employment decision, including that Appellant failed to follow the directives of her supervisor, Eugenia Sefcik, and that she lied to Sefcik about having complied with those directives. In her effort to show that these two reasons are pretextual, Appellant relies solely on the first method described above—i.e., evidence tending to show that these reasons had no basis in fact.

Reliance on the first method, however, is problematic. *See Kralman,* 23 F.2d at 156 (there is "a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake"). Evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer did not rely on the reason in making the employment decision. Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information. *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir.1991). *See also Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1133–34 (7th Cir.1994) (although employee established that employer's investigation of her conduct yielded an incorrect result, she did not show that the employer did not rely on that result in making its employment decision). It is obviously not a violation of federal employment discrimination laws for an employer to err in assessing the performance of an employee. *Moore v. Sears, Roebuck and Co.,* 683 F.2d 1321, 1323 n. 4 (11th Cir.1982). *See also Russell v. Acme–Evans Co.,* 51 F.3d 64, 68–69 (7th Cir.1995). Thus, establishing pretext is not merely demonstrating that the employer made a mistake, but that the employer did not give an honest account of its behavior.[7] *Elrod,* 939 F.2d at 1470.

In the case before us, Appellant failed to adduce sufficient evidence for a reasonable

---

7. A plaintiff may accomplish this in a variety of ways. For example, a plaintiff presenting evidence tending to show that the predicate facts underlying the proffered reason were false could

also provide evidence that the employer knew them to be false at the time of his purported reliance, *see, e.g., Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1563 (11th Cir.1987) (plain-

factfinder to conclude that NationsBank's proffered reasons did not actually motivate the decision to terminate Appellant. As Judge Hatchett notes, Appellant offered sufficient evidence for a factfinder to conclude that she followed Sefcik's directives. However, in my view, Appellant was unable to take the crucial next step. She failed to offer sufficient evidence from which a reasonable juror could infer that Sefcik did not genuinely believe that Appellant had disobeyed and lied to her. *Cf. Elrod,* 939 F.2d at 1470. Accordingly, because I believe Appellant presented insufficient evidence for a reasonable juror to find pretext, I concur in the affirmance of the district court's grant of judgment as a matter of law for NationsBank.

COX, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's affirmance of the directed verdict. The majority also correctly states the rule governing the award of attorney's fees, the factors a district court should take into account when applying that rule, and this court's abuse-of-discretion standard of review. I disagree, however, with the majority's determination that the district court abused its discretion in awarding NationsBank attorney's fees.

As the district court found, and as the majority points out in its discussion of the directed verdict, Walker had no evidence of gender discrimination. She adduced no testimony, for example, to sexist remarks. No evidence was presented of a pervasive pattern of favoring males at NationsBank. Walker offered no other evidence indicating that the arguably pretextual reasons NationsBank offered were pretexts for preferring males over females. Thus, this was not a difficult case in which the plaintiff almost, but not quite, met her evidentiary burden. *Cf. Busby v. City of Orlando,* 931 F.2d 764, 776–82, 787 (11th Cir.1991) (vacating a fee award because the evidence pre-

sented a close case, requiring careful consideration). Walker may have presented evidence of an unjust termination, but she never came close to showing that NationsBank discriminated against her.

Discretion, by definition, allows the district court a range of choices. When this court reviews a district court for abuse of its discretion, we do not disturb the result absent a "clear error of judgment." *United States v. Kelly,* 888 F.2d 732, 745 (11th Cir.1989). Despite the patent lack of evidence of discrimination, the majority contends that the district court abused its discretion in finding that at some point in the discovery process it should have been apparent that the suit was unreasonable or frivolous. The majority justifies this conclusion by what seems to me a de novo consideration of the appropriateness of the fee award. I find no abuse of discretion.

For these reasons, I respectfully dissent from the vacation of the fee award.

tiff demonstrated pretext where she showed that she complied with work rule and that employer knew she had complied); or, where the employee's poor performance is proffered as the basis for dismissal, an employer's contemporaneous reports of satisfactory performance will permit the factfinder to infer that the employer is lying, *see, e.g., Sempier v. Johnson & Higgens,* 45 F.3d 724, 731–32 (3rd Cir.1995), *and Cole v. Ruidoso*

*Mun. Schs.,* 43 F.3d 1373, 1380 (10th Cir.1994); or, the proffered reason may involve a disputed fact of a kind that it is improbable that the employer could have been mistaken about it. *See, e.g., Russell,* 51 F.3d at 68–69 (conduct in dispute was of a type that it was not plausible that employer could have "honestly but mistakenly believed" that the job did not require it).