[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 19, 2012
JOHN LEY
CLERK

No. 11-10745
Non-Argument Calendar
_____

D.C. Docket No. 8:09-cv-01726-VMC-AEP


SECRETARY, DEPARTMENT OF LABOR,

Plaintiff-Appellee,

versus

FLOYD W. SEIBERT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 19, 2012)

Before PRYOR, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Proceeding pro se, Floyd Seibert appeals the district court's grant of summary judgment to the Secretary of Labor ("the Secretary") in the Secretary's action against Seibert for breach of fiduciary duty in Seibert's role as the administrator and trustee of a pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. By this judgment, Seibert was ordered to pay $1,253,661.64 in lost opportunity costs and interest.

On appeal, Seibert argues that the district court erred in granting summary judgment for the Secretary without a hearing or further development of the evidence. He asserts this error deprived the court of the opportunity to decide the case based on competent evidence. Siebert also claims the district court erred in making certain discovery and evidentiary rulings. Upon review of the record and consideration of the parties' briefs, we affirm.

I.

We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Summary judgment is appropriate where the moving party demonstrates that no genuine issue of material fact exists and that the party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Chapman, 229 F.3d at 1023 (quotation marks omitted).

The district court did not err in granting summary judgment to the Secretary. Seibert's own admissions in deposition testimony and his plea agreement provided sufficient evidence for the court's determination that he was responsible for the transactions between the Central Home Care Services, Inc. and Affiliates 401(k) Plan ("the Plan") and Health Care International Holdings, Inc. ("HCIH").  These transactions deprived the Plan of assets and benefitted companies owned by Seibert.  Specifically, Seibert acknowledged in his deposition that money flowed from the Plan to HCIH for the purchase of bonds during his time as sole trustee of the Plan.  Furthermore, Seibert testified that, using the alias Martin Mesquite, he was involved in the decision to issue the bonds from HCIH to the Plan and to loan the money gained from those transactions to companies he owned.  Seibert further admitted in his plea agreement to transferring approximately $3.85 million from the Plan to HCIH, and then re-transferring that money to other companies he owned, thus siphoning money from the Plan as purported loans for use by companies he owned and operated.  All of these facts were substantiated by the

3

affidavit of Investigator Lizabeth Valencia, whose investigation revealed that Seibert had caused $3.85 million to be sent from the Plan to HCIH, which had in turn lent the money to companies owned by Seibert. Since these transactions allowed Seibert to use Plan funds for the benefit of companies he owned, the court properly found that this conduct constituted dealing with plan assets for the benefit of a party in interest and in Seibert's own interest, in violation of 29 U.S.C. § 1106(a)(1)(D) and § 1106(b)(1).

Beyond this, the transactions between the Plan and HCIH did not fall within any of the statutory exemptions allowing for otherwise prohibited transactions. See id. § 1108. At no stage in his pleadings has Seibert specified exactly which exemption he believes covered the transactions at issue or why any of the exemptions applied. And a review of the enumerated statutory exemptions does not reveal any that would remove Seibert's conduct from the category of prohibited transactions. See id. § 1108(b)(1)–(20).

Neither did the district court err in finding that Seibert's account balance could be offset against the amount he owed to the Plan. While Seibert is correct that ERISA-covered pension plan account balances are normally not subject to assignment or alienation, see id. § 1056(d)(1), the statute provides an exception where the plan balance is used to satisfy a civil judgment for violations of part 4 of

4

ERISA, see id. § 1056(d)(4)(A)(ii). Because the Secretary brought her complaint under part 4 of ERISA and the court found that Seibert had committed the alleged breaches of his fiduciary duties, this exception applies.

Finally, Seibert argues the Plan was "effectively terminated" when costs were disallowed by Medicare, thereby depriving the court of jurisdiction. However, there is no basis in law to conclude that Medicare's disallowance of Plan costs either effectively terminated the Plan or deprived the district court of ERISA jurisdiction.

In sum, Seibert's claim that the district court granted summary judgment based on its "credibility determinations" lacks any support. Since no genuine issue of material fact precluded judgment as a matter of law, summary judgment was appropriate. See Fed. R. Civ. P. 56(a).

## II.

We review a district court's rulings on both discovery and the admissibility of evidence for an abuse of discretion. United States v. R & F Properties of Lake Cnty., Inc., 433 F.3d 1349, 1355 (11th Cir. 2005); Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1554 (11th Cir. 1995).

Seibert contends that the court's refusal to issue a subpoena duces tecum for each of several parties and non-parties impeded Seibert's access to discovery.

Furthermore, Seibert argues that Investigator Valencia's failure to respond to interrogatories and requests for documents, along with the court's refusal to issue a subpoena duces tecum with regard to her, denied Seibert "admissibility" to Valencia under Federal Rule of Evidence 105.[1]

Seibert's claim that he was denied access to Investigator Valencia relies on an erroneous reading of Federal Rule of Evidence 105, which does not apply here. Rule 105 states: "If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. Rule 105 thus concerns the admissibility of evidence against a particular party or for a particular purpose at trial, and the court's obligation to properly restrict the evidence. See id. Seibert is therefore mistaken to take the Rule's reference to admissibility of evidence at trial to give him access to a person from whom evidence is gathered.

But even construing Seibert's argument as one related to his inability to obtain discovery from Investigator Valencia, the district court did not abuse its discretion in refusing to issue Seibert's requested subpoena duces tecum. The

---

[1] Siebert also claims the district court's refusal to issue the subpoena with regard to Valencia denied him his Sixth Amendment right to confront his accuser. This Sixth Amendment right, however, does not extend to civil cases. See U.S. Const. amend. VI.

record makes clear that Investigator Valencia was a non-party and therefore not subject to discovery under Federal Rules of Civil Procedure 33 and 34. See Fed. R. Civ. P. 33(a), 34(a). Furthermore, Seibert's request for a subpoena duces tecum, both as to Investigator Valencia and a number of other nonparties, was not submitted until September 9, 2010, more than three weeks after the close of the discovery period. The court was therefore within its discretion to deny the request as untimely.

Finally, Seibert maintains that statements from his earlier criminal plea agreement should not have been admitted as evidence under Federal Rules of Evidence 403 and 404(b). However, these statements contained factual admissions pertaining to Seibert's breach of the fiduciary duties he owed as trustee of the Plan. They therefore were highly relevant to the issues being decided, had significant probative value, and were not used for an improper purpose. Cf. United States v. Killough, 848 F.2d 1523, 1528 (11th Cir. 1988) (holding defendants' statements in prior guilty pleas were admissible because they were relevant to determining issue in civil case). Concern about unfairly misleading or biasing the fact-finder also was not at issue here. See Woods v. United States, 200 F. App'x 848, 853 (11th Cir. 2006) (noting that "the part of Rule 403 that authorizes exclusion of evidence because of its unfair prejudicial impact has no

logical relationship to bench trials" (quotation marks omitted)). For these reasons, the district court did not abuse its discretion by admitting Seibert's prior statements into evidence. See id.

For all of these reasons, we affirm the grant of summary judgment in favor of the Secretary of Labor.

**AFFIRMED.**