United States Court of Appeals,

Eleventh Circuit.

No. 94-8305.

UNITED STATES of America, Plaintiff-Appellant, Cross-Appellee,

v.

Gloria CROSBY, Sheriff of Columbia County (in her official capacity) and Columbia County, Georgia, Defendants-Appellees, Cross-Appellants.

July 27, 1995.

Appeals from the United States District Court for the Southern District of Georgia. (No. CV192-26), Dudley H. Bowen, Jr., Judge.

Before KRAVITCH and BIRCH, Circuit Judges, and GOODWIN[*], Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The United States appeals the district court's denial of relief in this Title VII disparate treatment case. Sheriff Gloria Crosby cross-appeals the district court's denial of attorneys' fees.[1] We AFFIRM.

I.

Carolyn Burbridge worked as a sergeant/shift supervisor in the detention center at the Columbia County, Georgia, Sheriff's Department. Her granddaughter was scheduled to serve as a page in the Georgia General Assembly on February 2, 1988. Burbridge was invited to accompany her granddaughter to Atlanta for the occasion.

Burbridge was slated to work February 2. She told Captain

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]Gloria Crosby succeeded Otis Hensley as Sheriff of Columbia County after Hensley's death on October 17, 1994 and has replaced Hensley as a named defendant in this lawsuit.

James Stottlemire, who was out on sick leave, that she wanted to go to Atlanta. Stottlemire said that the matter would have to be referred to Lieutenant James Gibbs, who had assumed Stottlemire's duties during his absence. Burbridge did not ask Gibbs for leave; instead, she told him that she was going to Atlanta on February 2. Gibbs did not respond to Burbridge's statement. Burbridge went to Atlanta on February 2 even though she knew that she had not been granted leave.

Burbridge's detention center shift was short-handed that day. When Burbridge did not report to work, Gibbs reported her absence and recommended that she be terminated. Sheriff Hensley ordered that Burbridge be fired if it were found that she was absent without leave. After a perfunctory investigation revealed that she did not have permission to miss work, Burbridge was terminated.

On February 12, 1992, the United States filed this action, pursuant to its enforcement powers under Title VII,[2] alleging that Burbridge's cursory termination and the hasty investigation leading to it constituted unlawful disparate treatment resulting from race and gender discrimination.[3]

## II.

### A.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to ... discharge any individual ...

---

[2]On May 5, 1988, Burbridge filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a cause determination and referred the case to the Department of Justice with a recommendation that a Title VII enforcement action be instituted. *See* 42 U.S.C. § 2000e-5.

[3]Burbridge is a black female.

because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a). Disparate treatment under Title VII occurs when "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308, 1313 (11th Cir.1994) (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335-36 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977) (citations omitted)).

When a plaintiff relies on circumstantial evidence, as here, proof in a Title VII case follows the approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548 (11th Cir.1995); *Armstrong,* 33 F.3d at 1313-14. First, the plaintiff must establish a prima facie case, "which creates a rebuttable presumption of unlawful discrimination." *Armstrong,* 33 F.3d at 1313-14. Next, the defendant may rebut the presumption established by the prima facie case "by articulating a nondiscriminatory reason for its actions." *Id.* at 1313.

In *St. Mary's Honor Center v. Hicks,* --- U.S. ----, ----, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993), the Supreme Court emphasized that once the defendant satisfies its burden of articulating a legitimate non-discriminatory reason for its actions, the presumption of discrimination "simply drops out of the picture" and the sole inquiry becomes whether the plaintiff has proven intentional discrimination. *See also Walker,* 53 F.3d at

1560 (Johnson, J., concurring) (citing *Hicks* ).  Evidence that similarly situated employees were treated differently is of probative value, but does not always establish that intentional discrimination occurred.  *Id.* (fact that defendant bank treated similarly situated branch manager differently from plaintiff insufficient to prove intentional discrimination).

## B.

This case proceeded under the *McDonnell Douglas* framework. After a bench trial, the district court determined that the United States had made out a prima facie case but that defendants had produced a nondiscriminatory reason for Burbridge's termination. Accordingly, the court then focused on whether intentional discrimination had been established.  The district court explicitly found that Sheriff Hensley, who terminated Burbridge, and Lieutenant Gibbs, who recommended the termination, did not intend to discriminate against Burbridge based upon her race or gender.[4] The district court attributed the severity of Burbridge's punishment to her role as a supervisor, a need to set an example, and a need to enhance discipline.  The district court thus concluded that "the disparate treatment that is sought to be proven in this case is a hollow concept and not a reality."

## C.

The United States contends on appeal that the district court

---

[4]Lieutenant Gibbs is black.  While we acknowledge that a Title VII violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim, *see Billingsley v. Jefferson County,* 953 F.2d 1351, 1353 (11th Cir.1992), we note that the district court found that there was no evidence that Gibbs held members of his own race to a higher standard of conduct than members of another race.

did not properly consider evidence that certain white male employees received more thorough disciplinary reviews and less severe sanctions than Burbridge. The United States claims that this evidence proves that Burbridge's harsh treatment was caused by intentional racial and/or gender discrimination. The United States also claims that the record does not support the district court's finding that Burbridge received severe treatment because she was a supervisor and because the Sheriff needed to be decisive and effective in enforcing discipline.

We review a district court's finding regarding intentional discrimination in a Title VII case for clear error. *Moulds v. Wal-Mart Stores, Inc.,* 935 F.2d 252, 255 (11th Cir.1991).

After a thorough trial, the district court determined that no intentional discrimination occurred. It heard testimony from Sergeant Burbridge, Sheriff Hensley, and Lieutenant Gibbs. The court found Hensley's and Gibbs's testimony to be credible; it found that Burbridge's was not.[5] The district court determined that any hostility Gibbs had toward Burbridge was due to "personalities," not race or gender. Based on Hensley's testimony, the court indicated that Burbridge's supervisory status and a need for decisiveness had an impact on the decision to terminate her.

The district court also considered the Sheriff's treatment of misconduct by white male employees. Many of the incidents cited by the United States on appeal were included in the stipulation of facts which the district court incorporated into its findings and

---

[5]Credibility determinations are generally beyond the purview of appellate courts. *Walker,* 53 F.3d at 1557.

conclusions.  Other incidents were detailed in a list comprised of actions taken against employees of the Sheriff charged with misconduct between January 1, 1985 and May 8, 1992;  this list was introduced into evidence by the defendants.  The district court explicitly stated that it had considered the list, but noted that the listed incidents did not change its decision.[6]

After reviewing the record, including all alleged incidents of differential treatment noted in appellant's brief, we conclude that the court's findings regarding intentional discrimination were not clearly erroneous.  The record contains no direct evidence of intentional discrimination, and the circumstantial evidence—incidents of more lenient treatment involving white males—is not conclusive.  None of the occurrences was substantially similar to the events leading to Burbridge's termination because none involved a supervisor who was absent from duty for an entire day knowing that leave had not been granted.[7]  Because of the

---

[6]The district court made no explicit factual findings as to which incidents of misconduct by other employees were comparable to Burbridge's, nor did the court state the impact particular incidents had on the court's result.  While such findings of fact might have facilitated appellate review, they are not necessary to decide this case.

[7]Only three of the cited incidents of misconduct—those by white male deputies Philip Stacy, Charles Johnson, and Tommy Carter—involve absences from regular shifts.  The record does not contain evidence that any of these deputies planned his absence ahead of time knowing that he had not been granted leave.  Stacy testified at trial that he did not recall the incident and believed the record of it must be erroneous.  Johnson's absence was not termed "unexcused" in the record;  instead, without further explanation, the record shows that he failed to report for duty one day in April 1985.  Carter called in sick after his shift had started on the day of his absence.  These incidents are distinguishable for two reasons:  (1) because they do not demonstrate the type of planned unexcused absence which occurred in Burbridge's case, and (2) due to the district court's finding,

factual differences involved in all of these incidents, the evidence offered by the United States does not so unequivocally support a finding of intentional discrimination in Burbridge's termination or the cursory investigation preceding it as to render the district court's decision clearly erroneous.

Burbridge's termination was swift and severe. The record could support an inference that Burbridge was treated more harshly than other employees. Another district court, facing similar evidence and making different credibility choices, might even conclude that this differential treatment was caused by intentional discrimination. We cannot, however, hold that this district court clearly erred by not so concluding. Accordingly, we AFFIRM.

### III.

The final issue in this case is whether the district court improperly refused to award attorneys' fees to the Sheriff pursuant to 42 U.S.C. § 2000e-5(k).[8] A defendant may recover attorneys' fees under Section 2000e-5(k) if "the court finds that [the] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978). We review the district court's decision to deny attorneys' fees for abuse of discretion. *Hill v. Seaboard*

---

which is not clearly erroneous, that Burbridge's supervisory status resulted in heightened discipline.

[8]Section 2000e-5(k) provides: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

*Coast Line R. Co.,* 767 F.2d 771, 775 (11th Cir.1985).

Our review of the record reveals that the district court did not abuse its discretion. While the United States was ultimately unable to prove intentional discrimination, its allegations were not frivolous, unreasonable, or groundless, nor did they become so. *See Walker,* 53 F.3d at 1558-59 (Title VII attorneys' fees for defendants improper where plaintiff established prima facie case, the case proceeded to trial, and the female plaintiff presented evidence that similar male employee was not disciplined). We therefore AFFIRM the district court's denial of attorneys' fees.

AFFIRMED.