Richard A. BROWN, Plaintiff,

v.

WESTINGHOUSE SAVANNAH RIVER CORPORATION, Defendant.

Civil Action No. CV 195–68.

United States District Court,
S.D. Georgia,
Augusta Division.

June 18, 1996.

Samuel Warren Cruse, Augusta, GA, for plaintiff.

Gregg Evan McDougal, Daniel W. Hamilton, Kilpatrick & Cody, Augusta, GA, for defendant.

### ORDER

BOWEN, District Judge.

Before the Court is Defendant's Motion for Summary Judgment in this action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* Defendant Westinghouse Savannah River Company ("Westinghouse")[1] argues that

Plaintiff has failed to establish a *prima facie* case of discriminatory discharge under Title VII. Further, Westinghouse contends Plaintiff cannot rebut Westinghouse's articulated, non-discriminatory reason for Plaintiff's termination. For the reasons stated herein, Defendant's Motion for Summary Judgment is **GRANTED.**

### I. FACTUAL BACKGROUND

Plaintiff Richard Brown, a white male, worked for Westinghouse at the Savannah River Site, a nuclear weapons facility. The primary mission of the Savannah River Site is to stabilize legacy material for the Defense Weapons Program and to produce tritium for the program. At the time Plaintiff was discharged from Westinghouse, he was first-line shift supervisor of twenty-eight employees in the FB Line Facility, which produces components for nuclear warheads. Plaintiff also possessed a sensitive Q security clearance at the time; this security clearance allows an individual to have access, on a need-to-know basis, to top secret, secret and confidential levels of restricted data, formerly restricted data, national security information, or special nuclear material as required in the performance of duties.

On November 19, 1993, Plaintiff took a safety-related systems examination which tested his knowledge of the safety-related systems in the facility. Plaintiff knew prior to taking the exam that cheating was a violation of the company's Rules of Conduct which could result in disciplinary action. While taking the exam, Plaintiff cheated by referring to notes located in his lap. Two other test takers witnessed and reported the incident. Plaintiff admitted he cheated on the examination when confronted. Plaintiff was terminated on December 23, 1993.

■ As a result of this termination, Plaintiff filed a charge of racial and sexual employment discrimination against Westinghouse with the Equal Employment Opportu-

---

**1.** Westinghouse Savannah River Company is incorrectly identified as Westinghouse Savannah River Corporation in the pleadings.

nity Commission.[2] The EEOC discrimination claim was denied, and Plaintiff brought this Title VII action against Westinghouse.

## II. REQUIREMENTS FOR SUMMARY JUDGMENT

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When the *non-moving* party has the burden of proof at trial, as in this case, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark*, 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."

*Clark*, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir.1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark*, 929 F.2d at 609 n. 9.

## III. LAW/ANALYSIS

Plaintiff, a white male, brought this reverse discrimination suit against Westinghouse even though he admittedly violated company policy by cheating on his safety examination. Plaintiff would show this Court that he has direct knowledge of blacks and females who violated company policies and were not terminated. Essentially, Plaintiff's discrimination theory rests on the alleged disparate disciplinary treatment of employees who violate the Rules of Conduct.

Plaintiff is attempting to show intentional discrimination by presenting cir-

**2.** For the first time in his responsive brief, Plaintiff alleges age discrimination. Age discrimination was not asserted in Plaintiff's EEOC complaint. Therefore, to the extent Plaintiff now attempts to raise a claim of age discrimination in this suit, such claim is dismissed with prejudice.

*See, e.g.,* 42 U.S.C. § 2000e–5; *Plaisance v. Travelers Ins. Co.*, 880 F.Supp. 798 (N.D.Ga.1994) ("[A] plaintiff must fulfill the statutory prerequisite of filing a timely charge of discrimination with the EEOC before a lawsuit can be instituted.").

cumstantial evidence of disparate treatment.[3] In cases in which a plaintiff relies upon circumstantial evidence, the United States Supreme Court has articulated a burden-shifting framework within which Title VII discrimination cases may be analyzed. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980). Under the *McDonnell Douglas–Burdine* framework, a plaintiff must first establish a *prima facie* case of discrimination. The burden of production then shifts to the employer to offer a legitimate, non-discriminatory reason for the plaintiff's termination. Once such a reason is presented, the burden shifts back to the plaintiff to show that the reason proffered was mere pretext. *See generally Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). Plaintiff at all times carries the ultimate burden of proving by the preponderance of the evidence that the challenged employment decision was motivated by unlawful discrimination. *See id.* at 253, 101 S.Ct. at 1093.[4]

### A. Prima Facie Case of Discrimination

█ Plaintiff may carry his burden of establishing a *prima facie* case of discriminatory discharge by showing the following:

(a) That he is a member of a protected class;

(b) That he was qualified for the position held; and

(c) That he was discharged or replaced by a person outside of the protected class or was discharged while a person outside of the class with equal or lesser qualifications was retained.

*Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982) (citations omitted).[5]

█ In this case, Plaintiff has clearly failed to establish the third prong of a *prima facie* case.[6] Prong three requires Plaintiff to

---

**3.** Plaintiff has presented no direct evidence of intentional discrimination, that is, evidence which, if believed, would prove discriminatory intent without inference or presumption. *See Earley v. Champion Internat'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990); *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989) ("[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate . . . , constitute direct evidence of discrimination.").

**4.** Despite Plaintiff's assertion to the contrary, where a complainant relies upon circumstantial evidence supporting the inference of discrimination, the *McDonnell Douglas–Burdine* framework is an integral part of a summary judgment determination. *See, e.g., Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773–74 (11th Cir.1982); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir.1993) (applying the framework to a Title VII disparate treatment claim and affirming the grant of summary judgment pursuant to that application).

Also, in *Fitzpatrick* the court explained that for issues on which the non-moving party bears the burden of proof at trial, as here,

the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge th[e] initial responsibility. Instead, the moving party simply may show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case.

*Id.* at 1115–16 (emphasis in original) (citations omitted).

**5.** Although this standard is not the exclusive method of establishing a *prima facie* case of discrimination, *see McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13 and *Burdine*, 450 U.S. at 253–54 n. 6, 101 S.Ct. at 1094 n. 6. I will use it because Plaintiff inferentially uses it. That is to say, Plaintiff argues that he has circumstantially established a *prima facie* case of discrimination by showing that he is a member of a protected class, *see infra* n. 6, and that adverse action was taken against him in disparate fashion while other employees who violated company policies were retained.

**6.** Because this a reverse discrimination suit, Defendant Westinghouse urges this Court to adopt the modified *prima facie* case analysis articulated in *Parker v. Baltimore & Ohio R. Co.*, 652 F.2d 1012 (D.C.Cir.1981). In *Parker* the United States Court of Appeals for the District of Columbia modified the first prong of the test when a non-minority plaintiff seeks to establish a *prima facie* case of discrimination. The court explained that because the disparate treatment of a white employee does not compel the same inference of prejudice as the disparate treatment of a black employee does, non-minority plaintiffs must provide some evidence, apart from merely their race or sex, that supports "the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* at 1017, *cited with approval in Notari v. Denver Water Dep't*, 971 F.2d 585, 588 (10th Cir.1992); *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir.1985). The Eleventh Circuit has not

show that he was discharged while a person outside of the class with equal or less qualifications was retained. To satisfy this burden, Plaintiff relies solely on his own deposition and affidavit wherein he identifies twenty-nine Westinghouse employees purported to have committed violations of the Rules of Conduct but who were not terminated. Of these twenty-nine named individuals, twelve are white males within Plaintiff's class, and therefore these twelve employees are irrelevant to any disparate treatment analysis. As to the remaining seventeen employees outside the Plaintiff's class, Plaintiff must show that one of these employees engaged in conduct "nearly identical" to conduct engaged in by Plaintiff but for which the employee was not terminated. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984).

In his affidavit and deposition, Plaintiff simply lists the names of individuals and alleges that they committed violations of company policy without being terminated. The information provided by Plaintiff is not made of his personal knowledge, but it is instead based on hearsay with absolutely no corroborating evidence of any kind.[7] When asked in his deposition where he had obtained the information for his "list," Plaintiff testified that he did not know. In several instances, Plaintiff simply states that the individual committed a "procedural" or a "policy violation." Yet, Plaintiff could not relate what type of procedural violation occurred. Without identifying the specific facts of the alleged misconduct, this Court certainly cannot determine whether the individual was treated differently for "nearly identical" activity. In other instances, Plaintiff includes the names of individuals who were caught sleeping on the job or who had tested positive for drugs. Again, this Court cannot

examine whether Plaintiff was treated differently from a person similarly situated if the named individuals did not commit similar rule violations.

■■■ The only two employee situations listed by Plaintiff that may be remotely comparable to this situation is that of Barbara Moore and Leroy Elmore. Barbara Moore, a black female, gave false information during an investigation of her failure to use authorized procedures to respond to difficulties with the completion of a specific procedure. Even though this alleged misconduct involved dishonesty, it is not the same as cheating on a safety-related systems examination by a first-line supervisor who helps make nuclear warheads. Leroy Elmore, a maintenance mechanic,[8] was *suspected* of cheating on an examination, but such suspicion was never confirmed.

In short, Plaintiff fails to name any supervisor with comparable responsibilities outside of his class who was retained by Westinghouse while committing nearly identical misconduct. Therefore, he has not shown the disparate treatment required to satisfy the third prong of a *prima facie* case. Such absence of evidence to support Plaintiff's claim of discrimination is fatal to his case.

B. *Westinghouse's Legitimate, Non-discriminatory Reason for Plaintiff's Termination*

■■■ Even assuming Plaintiff could establish a *prima facie* case of discrimination, Plaintiff must offer evidence to rebut the non-discriminatory reason for his termination, that is, Plaintiff's cheating on the safety-related systems examination. Plaintiff must present "significantly probative" evidence from which a jury could infer that this proffered reason was merely pretext. *Young*

---

addressed this issue. *See Wilson v. Bailey,* 934 F.2d 301 (11th Cir.1991).

Because I find Plaintiff has failed to establish the third prong of a *prima facie* case, I decline to address the issue here except to point out that Plaintiff has not offered any evidence that Westinghouse is "that unusual employer who discriminates against the majority."

7. *See* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowl-

edge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

8. *See United States v. Crosby,* 59 F.3d 1133, 1136 (11th Cir.1995) (finding that none of the listed occurrences were substantially similar to that of the plaintiff supervisor because the occurrences did not involve a supervisor).

**1174**

*v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988). Plaintiff has utterly failed to present any evidence of pretext. Because he ultimately bears the burden of establishing pretext, Plaintiff's failure to present significantly probative evidence of such compels summary judgment.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED.** The clerk is instructed to **ENTER FINAL JUDGMENT** in favor of Defendant and **CLOSE** this case. Costs are taxed against Plaintiff.

**ORDER ENTERED.**