**Steve LONGARIELLO, Plaintiff,**

v.

**SCHOOL BOARD OF MONROE COUNTY FLORIDA, Monroe County Public Schools, Defendant.**

No. 95–10055CIV.

United States District Court, S.D. Florida.

Sept. 12, 1997.

United States Magistrate Judge Barry S. Seltzer. Objections were filed thereto by plaintiff. Upon independent *de novo* review of the entire record herein, the findings and recommendation of Magistrate Judge Seltzer are approved and adopted. Therefore, it is

**ORDERED AND ADJUDGED** as follows:

1. The motion for summary judgment by defendant (docket entry # 58) is hereby **GRANTED.**

2. The cross-motion for summary judgment by plaintiff (docket entry # 79) is hereby **DENIED.**

3. The objections filed by plaintiff to the order on various motions by Judge Seltzer are hereby **DENIED.**

All pending motions are denied, as moot.

### REPORT AND RECOMMENDATION TO DISTRICT JUDGE

Steve J. Longariello, Sunrise, FL, pro se.

Michael W. Casey, III, Richard D. Tuschman, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Miami, FL, for Defendant School Bd.

### FINAL ORDER ON REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ROETTGER, District Judge.

**THIS CAUSE** is before the court upon the Report and Recommendation prepared by

SELTZER, United States Magistrate Judge.

**THIS CAUSE** is before the Court upon the parties' cross-motions for summary judgment (DE 58 and DE 79) [1] and was referred to United States Magistrate Judge Barry S. Seltzer pursuant to the provisions of 42 U.S.C. § 2000e–5(f)(5).

### I. BACKGROUND

Plaintiff Steve J. Longariello brings this action *pro se* against the School Board of

---

1. On October 21, 1996, the School Board filed its motion for summary judgment (DE 58), together with a supporting memorandum (DE 58) and a statement of undisputed material facts (DE 59). On October 30, 1996, Longariello moved for an extension of time to respond to the motion until after the District Court ruled on his motion to reconsider the denial of his summary judgment motion (DE 60). The undersigned denied the requested relief but permitted Longariello until November 25, 1996, to respond to the School Board's summary judgment motion; the order stated that no further extension would be granted absent a showing of good cause (DE 62). On November 20, 1996, Longariello filed a second motion for extension of time, again requesting that he not be required to respond until after the District Court ruled on his pending motion to

reconsider (DE 64). On November 26, 1997, the undersigned granted Longariello an extension until December 6, 1996 (DE 66). On December 4, 1996, Longariello filed objections to this Order, stating that he did not receive the Order until December 2, 1996, and, thus, was incapable of responding by the due date (DE 67). Six months later, on June 9, 1997, Longariello filed an untimely response to the School Board's summary judgment motion, as well as a cross-motion for summary judgment (DE 79). On June 19, 1997, the School Board replied to Longariello's response to its summary judgment motion (DE 82), and on June 26, 1997, it responded to Longariello's cross-motion for summary judgment (DE 84).

Monroe County, Florida ("School Board"), alleging that the School Board discriminated against him on the basis of his gender (male) and his gender plus his marital status (single) in violation of Title VII, 42 U.S.C. § 2000e *et seq.* More specifically, the (verified) Amended Complaint (DE 47) alleges that in August 1992 Longariello began applying for teaching positions in the Monroe County School District and that the School Board wrongfully refused to hire him for the 1992–93 academic school year even though he was qualified to teach Special Education, Elementary Education, Music, and Psychology.

## II. *STANDARD OF REVIEW*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. An issue is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it must be decided to resolve the substantive claim or defense to which the motion is directed. *Id.; Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913 (11th Cir.1993).

The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the movant has satisfied its initial burden, the non-moving party must then go beyond the pleadings to rebut any facts properly presented; it may do so through affidavits or other evidence showing the existence of genuine issues of material fact for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Adickes,* 398 U.S. at 160, 90 S.Ct. at 1610.

Summary judgment is appropriate when, after adequate time for discovery, the non-moving party cannot establish an essential element on which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id. See also Earley v. Champion International Corp.,* 907 F.2d 1077 (11th Cir.1990).

In considering the motion, the Court must construe the evidence and the inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Furthermore, facts asserted by the party opposing a summary judgment motion must be regarded as true if supported by affidavit or other evidentiary material. *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir.1981) (quoting 10C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2727 at 524–30 (1973)).

## III. *BURDEN ALLOCATION IN DISCRIMINATION CASES*

A plaintiff may establish a *prima facie* case of discrimination by three methods: (1) direct evidence of discriminatory intent; (2) statistical proof of a pattern of discrimination; or (3) circumstantial evidence that raises a rebuttable presumption of intentional discrimination under the four prong test set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Walker v. NationsBank of Florida N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995); *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989).[2]

### A. *Direct Evidence*

Direct evidence is that which "establishes discriminatory intent without infer-

---

**2.** In support of his summary judgment motion and in opposition to the School Board's summary judgment motion, Longariello simply

quotes from Federal Rule of Civil Procedure 56 and identifies and "adopts" the various pleadings and documents in the record that he contends

ence or presumption." *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir. 1993). By contrast, circumstantial evidence is that which only "suggests discrimination, leaving the trier of fact to *infer* discrimination based on the evidence." *Earley,* 907 F.2d at 1081–82 (emphasis in original). Longariello has presented no direct evidence of discrimination.[3]

### B. Statistical Evidence

In his verified Amended Complaint (DE 47, ¶ 29–37), Longariello sets forth the following gender[4] "statistics" for the 1992–93 academic school year:

1. The School Board employed 535 total Instructional staff, of which 22.5% were male;

2. The School Board employed 487 Classroom teachers, of which 23.5% were male;

3. The School Board employed 223 Elementary School teachers, of which less than 8% were male;

4. The School Board employed 79 Exceptional Education (Special Education) teachers, of which less than 13% were male;

5. The School Board employed 48 other Instructional staff, of which 15% were male.[5]

■ These figures, however, are not probative of discriminatory intent in hiring and

must be disregarded. "Where plaintiffs use statistical evidence to challenge an employer's hiring practices, that evidence, to be probative of discriminatory intent, must compare the relevant portion of the employer's work force with the qualified population in the relevant labor market." *Anderson v. Douglas & Lomason Co., Inc.,* 26 F.3d 1277, 1286 (5th Cir.1994), *cert. denied,* 513 U.S. 1149, 115 S.Ct. 1099, 130 L.Ed.2d 1066 (1995). The "relevant labor market" here must be determined by reference to those who sought the positions for which Longariello applied and was qualified.

In his affidavit, Longariello states that he has reviewed the applications of the individuals who applied for Special Education positions in the Monroe County School District, the 1992–93 "new hire" list, and the 1992–93 payroll records of the employed teachers. (Petitioner Affidavit, ¶¶ 36–39, attached to DE 53). According to Longariello, 47 individuals applied for a Special Education position during the relevant period; 34 of these applicants were female (72.3%) and 13 were male (27.7%). Longariello further states that of the 23 Special Education teachers hired by the School Board, 18 were female (78.3%) and 5 were male (21.7%). He cites the 6% differential between the percentages of males applying and males hired as evidence of intentional gender discrimination.

■ Longariello has not submitted the underlying documentation from which he pur-

---

support his motion, controvert the School Board's statement of undisputed facts, and show undisputed material facts. Longariello fails to identify any specific portions of the record. The undersigned has nevertheless reviewed the entire record in making this recommendation on the cross-motions for summary judgment.

3. The only evidence presented by Longariello that could arguably be considered direct evidence of gender discrimination is two novelty statues he allegedly observed on a principal's desk during an interview for a special education teaching position at Key Largo Elementary School. According to Longariello, these statues had "negative sayings" about men and were "pointed right at him" during the interview. ((verified) Amended Complaint, DE 47, ¶ 15; Longariello Dep., DE 59, Ex. I, p. 46). Other than characterizing them as "snide," Longariello cannot recall anything about these "negative say-

ings." The School Board denies that the principal had any such statues on her desk. (Answers to Interrogatories 5 and 6, attached to Plaintiff's Supplemental Affidavit, DE 53). Even taking Longariello assertions as true, these statues would only suggest discrimination and, hence, do not constitute direct evidence.

4. Longariello has not presented any statistics reflecting marital status.

5. Although the Amended Complaint does not identify the source of these statistics, it appears that they were derived from a December 1993 document entitled "Profiles of Florida School Districts 1992–93" published by the Bureau of Education Information and Assessment Services, Education Information and Accountability Services Section. (DE 7, p. 68).

portedly derived these statistics. Nonetheless, accepting Longariello's data as true, and even assuming that the sample is sufficiently large to permit reasonable inferences to be drawn, the Court concludes that the statistics fall far short of establishing a pattern of intentional discrimination against males generally or of disparate treatment against Longariello in particular. Moreover, the record shows that of the Special Education positions[6] available in Florida, Longariello was eligible for certification only in the area of Specific Learning Disabilities. And he has proffered no statistics concerning the number of applicants and the gender of those hired for positions in this area.[7]

Longariello also erroneously compared the number of male applicants for Special Education positions at the Key Largo Elementary–Middle School to the number of males actually hired into all teaching positions at that school. (Petitioner Affidavit, ¶ 38–39, attached to DE 53). According to Longariello, of the 45 applicants for Special Education positions at the Key Largo school, the 14 male applicants comprised 31% of the total; yet, the School Board hired only 11% males.[8] Although Longariello does not identify whether this 11% figure refers to males hired for Special Education positions or males hired for all teaching positions, it apparently refers to the latter. Longariello refers to Exhibit 3 A attached to the affidavit of Janet England, Certification/Personnel Specialist.

(DE 59, Ex. 3 A). This exhibit reflects that of the 18 teachers hired in all positions at the Key Largo school, 2 (or 11%) were male; however, the ·exhibit does not identify the number of teachers hired for Special Education positions. Therefore, Longariello's comparison between the percentage of Special Education male applicants (31%) and the percentage of males actually hired (11%) is flawed; it does not show intentional gender discrimination. He has compared ·"apples" (applicants for Special Education positions) to "oranges" (teachers hired for all positions). Indeed, the evidence establishes that one female and one male· were hired for two Exceptional Child Education· (Special ·Education) positions at the Key Largo school for the 1992–93 academic year; this hardly evidences intentional gender discrimination. ·

### C. McDonnell Douglas Circumstantial Evidence

The Supreme Court has outlined the burden shifting framework for deciding intentional discrimination claims. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas* and *Burdine*, the plaintiff must first establish,· by a preponderance of the evidence, a *prima facie* case of discrimination.[9] *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94; *McDonnell*

6. Defendant's Answer to Interrogatory 1 identifies the following areas of Special Education in Florida: Gifted; Speech Therapy; Emotionally Handicapped; Severely Emotionally Disturbed; Pre–Kindergarten Handicapped; School Psychologist; Varying Exceptionalities; and Specific Learning Disabilities. (Answers to Petitioner's First Set of Interrogatories, attached to DE 53)

7. According to Defendant's Answer to Interrogatory 1, for the 1992–93 academic year, the School Board hired four teachers for Specific Learning Disabilities classes. The gender of these four individuals is not indicated. (Answers to Petitioner's First Set of Interrogatories, attached to DE 53). Longariello testified in his deposition that certification in any one area of Special Education permits an individual to also teach a Varying Exceptionalities class. (Longariello Dep., p. 53, DE 59, Ex. 6). This testimony finds some support in the record as the School

Board offered Longariello a Varying Exceptionalities position in November 1993. Defendant's Answer to Interrogatory· 1 indicates that the School Board filled 13 vacancies for Varying Exceptionalities classes for the 1992–93 academic year; however, gender statistics are also not provided for these positions.

8. Longariello has not .provided the number of males hired for either Special Education positions or all teaching positions—a figure necessary to derive any percentage.

9. On a defendant's motion for summary judgment, before a plaintiff must make any evidentiary showing, the defendant must demonstrate that the plaintiff lacks evidence that could establish a *prima facie* case. *See Celotex*, 477 U.S. at 323, 325, 106 S.Ct. at 2553–54; *Dickson v. Amoco Performance Products, Inc.*, 845 F.Supp. 1565, 1569 (N.D.Ga.1994).

*Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994). By establishing a *prima facie* case, a plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against him. *Trotter v. Bd. of Trustees of the Univ. of Alabama,* 91 F.3d 1449, 1454 (11th Cir.1996); *Hairston,* 9 F.3d at 919 n. 8.

■ Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant "to articulate some legitimate, non-discriminatory reason" for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Trotter,* 91 F.3d at 1454. This intermediate burden for the defendant is "exceedingly light." *Walker,* 53 F.3d at 1555. To satisfy the burden, a "defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95). "In other words, a defendant satisfies its intermediate burden of production if it produces 'admissible evidence which would allow the trier of fact to conclude that the employment decision had not been motivated by discriminatory animus.'" *Id.* (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061–62 (11th Cir.1994)). If the defendant successfully carries its burden, the presumption raised by the plaintiff's *prima facie* case is rebutted and drops from the case. *Id.; Hairston,* 9 F.3d at 918 (citing *Burdine,* 450 U.S. at 255 and 255 n. 10, 101 S.Ct. at 1095 and 1095 n. 10).

■ Once such a justification is proffered, the plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the evidence that the employer had a discriminatory intent. *Batey,* 24 F.3d at 1333. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749. Although no additional proof of discrimination is required to support a finding of intentional discrimination, "rejection of the defendant's proffered reasons does not compel judgment for the plaintiff as a matter of law." *Batey,* 24 F.3d at 1333. The risk of nonpersuasion always remains with the plaintiff. *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747.[10]

### D. *Analysis*

■ Longariello alleges that the School Board refused to hire him for a teaching position because of his gender (male) and his gender plus marital status (single). To establish a *prima facie* case for failure to hire, Longariello must show: (1) that he belongs to a protected class; (2) that he applied for and was qualified for the position; (3) that he was rejected; and (4) that "after his rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

■ Title VII makes it unlawful for an employer to refuse to hire an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). As a male, Longariello clearly is a member of

---

**10.** This Circuit has provided useful guidance as to the nature of plaintiff's burden at this stage of the analysis upon a defendant's motion for summary judgment:

> The burden to avoid summary judgment is not to show ... that the reasons stated [by the defendant for the adverse employment action] were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which ... could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext.... The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue.

*Hairston,* 9 F.3d at 921 (citations omitted). *See also Combs v. Plantation Patterns,* 106 F.3d 1519, 1532 (11th Cir.1997)("[O]nce a plaintiff has established a *prima facie* case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law.").

a protected class. Although marital status is not specifically enumerated as a protected class under Title VII, courts have held that discrimination based upon marital status may be cognizable as gender discrimination where there is a disparate impact upon one gender. *See, e.g., Coleman v. B–G Maintenance Management of Colorado, Inc.,* 108 F.3d 1199 (10th Cir.1997); *Fisher v. Vassar College,* 70 F.3d 1420 (2d Cir.1995), *aff'd on rehearing en banc,* 114 F.3d 1332 (2nd Cir. 1997); *Bryant v. Int'l Sch. Servs.,* 675 F.2d 562 (3rd Cir.1982); *Inda v. United Air Lines,* 565 F.2d 554 (9th Cir.1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978); *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *Lyles v. Meritor Sav. Bank,* 1992 WL 165840 (E.D.Pa. June 15, 1992). This form of discrimination is known as "sex-plus" or "gender-plus" discrimination.[11] *Myers v. Chestnut Hill College,* 1996 WL 67612, \* 6 (E.D.Pa.1996). "In a sex-plus discrimination case, the Title VII plaintiff does not allege that an employer discriminated against a protected class as a whole, but rather that the employer disparately treated a subclass within the protected class." *Arnett v. Aspin,* 846 F.Supp. 1234, 1238 (E.D.Pa.1994). Thus, Title VII prohibits employers from treating single men differently than single women, but it does not protect marital status alone. *Fisher,* 70 F.3d at 1447. To establish a gender-plus marital status claim, Longariello must demonstrate that the School Board treated single men less favorably than it treated single women. *See id.* at 1446; *Coleman,* 108 F.3d at 1203; *Bryant,* 675 F.2d at 575. Longariello, how-ever, has not provided even a scintilla of evidence relating to the treatment of single women. "Gender-plus plaintiffs can never be successful if there is no corresponding sub-class of members of the opposite gender. Such plaintiffs cannot make the requisite showing that they were treated differently from similarly situated members of the opposite gender." *Coleman,* 108 F.3d at 1204. Accordingly, the School Board is entitled to summary judgment on Longariello's gender-plus marital status claim.

■ Having found that Longariello is a member of a protected class (male), the Court must next determine the open positions for which Longariello applied and was qualified. Longariello has submitted documentation demonstrating that he is certified to teach in Nursery School, Kindergarten, First through Sixth grades, and Special Education in New York (DE 7, p. 12) and that he holds a Professional Educator's license in Vermont. (DE 7, p. 13). Additionally, he summarily avers that he is qualified to teach Elementary Education, Music, Psychology, and Special Education in the Monroe County (Florida) School District. However, mere verification of a party's own conclusory allegations is not sufficient to support or oppose a summary judgment motion. *Bennett v. Parker,* 898 F.2d 1530, 1534 (11th Cir.1990), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991); *Fullman v. Graddick,* 739 F.2d 553, 556 (11th Cir.1984).

In July 1992, Longariello applied for a two-year nonrenewable temporary Florida Educator's Certificate.[12] (DE 7, p. 22). After evaluating the application, on October 15,

---

11. A "gender-plus" (or sex-plus) discrimination claim was first recognized by the Supreme Court in *Phillips v. Martin Marietta, Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496, 497–98, 27 L.Ed.2d 613 (1971), wherein it held that Title VII not only forbids discrimination against women in general but also against subclasses of women, such as women with pre-school-age children. *See also UAW v. Johnson Controls,* 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991)(gender-plus fertility); *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (gender-plus gender stereotypes); *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983)(gender-plus pregnancy).

12. The State of Florida issues two types of teacher certification—a two-year nonrenewable temporary certificate and a five-year professional certificate. Florida issues the temporary certificate to permit time to complete the requirements for obtaining a professional certificate. The issuance of a temporary certificate is contingent upon an individual obtaining employment with a Florida school and a review of a fingerprint card and arrest record. (DE 7, p. 26).

1992, the State of Florida notified Longariello that he was eligible for a two-year nonrenewable temporary certificate only in the area of Specific Learning Disabilities ("SLD")(kindergarten through grade 12). (DE 7, p. 26–29).

■ On August 7, 1992, Longariello interviewed for one of two Exceptional Child Education (Special Education) teaching positions available at Key Largo Elementary–Middle School for the 1992–93 academic year. (St. James Aff., ¶ 4, DE 59, Ex. 1; Longariello Dep., p. 29, DE 59, Ex. 6). In addition to Longariello, twelve other candidates, including five men, applied for the positions. (St. James Aff., ¶ 3, DE 59, Ex. 1). Principal Frances McCormick St. James and Assistant Principal Annette Hall interviewed all applicants. They conducted each interview in the same manner, using the same list of interview questions. (St. James Aff., ¶¶ 4, 8, Ex. B, DE 59, Ex. 1). Neither the employment application nor the standard set of interview questions sought information as to marital status (St. James. Aff., ¶ 7, Ex. B and C, DE 59, Ex. 1), and Longariello did not volunteer this information. (Longariello Dep., pp. 42–45, DE 59, Ex. 6). Moreover, Longariello admits that neither St. James nor Hall said anything during that interview that evidenced gender discrimination. (Longariello Dep., pp. 46–47, DE 59, Ex. 6). Longariello complains only that he observed on the Principal's desk two novelty statues that contained "snide" comments regarding men; however, he cannot recall the comments. (Longariello Dep., p. 46, DE 59, Ex. 6).

After considering all of the applicants, the School Board offered the Exceptional Child Education (Special Education) positions to one married female, Catherine Walker, and one single male,[13] Gregory Kickasola, both of whom accepted the offers.[14]

■ Longariello has not brought to the Court's attention any other positions for which he was qualified and that were available in the Monroe County School District for the 1992–93 academic year. The School Board, however, refers to two vacant Severely Emotionally Handicapped teaching positions at the Key Largo school for the following academic year—1993–94.[15] Both these positions required certification and experience in the area of Emotionally Handicapped. (Sayre Aff., ¶ 2, DE 59, Ex. 2). After reviewing Longariello's resume and application, Douglas Sayre, Director of the Monroe County Exceptional Student Education Program, determined that Longariello was not eligible for Emotionally Handicapped certification. (Sayre Aff., ¶ 4, DE 59, Ex. 2). Sayre avers that his telephone conversations with Longariello confirmed that Longariello lacked the specific college course work necessary for this certification and that he had little experience working with emotionally handicapped students.[16] (Sayre Aff., ¶ 5, DE 59, Ex. 2). Moreover, Longariello admits that he "might have lacked a course or two" for certification in this area. (Longariello Dep., p. 70, DE 59, Ex. 6). According to Sayre, the teachers that were ultimately hired into these positions had "significant experience teaching emotionally disturbed

**13.** Although the marital status of these individuals was unknown during the hiring process, the School Board has now ascertained this information from their W–4 federal tax withholding forms. (England Aff., ¶ 9, DE 59, Ex. 3).

**14.** Longariello contends that he was unaware that two vacant special education positions existed at Key Largo. ((verified) Amended Complaint, ¶ 14, DE 47). And he insists that he was not applying for the position accepted by Gregory Kickasola. Longariello, in fact, doubts that the School Board hired Kickasola for a special education position (Longariello Dep. pp. 54–64, DE 59, Ex. 6). However, he has presented no evidence to support these contentions.

**15.** Although the Amended Complaint alleges that Longariello applied and was rejected for teaching positions for the 1992–93 academic year, it also states the relevant time period as August 1992 through November 1993. (Amended Complaint, ¶ 5, DE 47).

**16.** Longariello's only relevant experience in this area was as a per diem substitute music and vocational teacher for the learning disabled and emotionally handicapped for less than a year in New York City. (Longariello Dep., pp. 70–76, DE 59, Ex. 6).

students, and also met the requirements for Emotionally Handicapped certification." (Sayre Aff., ¶ 13, DE 59, Ex. 2). Longariello has presented no evidence to the contrary.

█ In November 1993, Longariello also interviewed for a Varying Exceptionalities teaching position at Marathon High School for the remainder of the 1993–94 academic year. (Longariello Dep., p. 84, DE 59, Ex. 6). The School Board offered this position to Longariello. (Sayre Aff., ¶ 14, DE 59, Ex. 2). Longariello, however, declined the offer, apparently because the School Board would not guarantee that the position would be available and that he would be rehired the following year. (Longariello Dep., pp. 84–88, DE 59, Ex. 6). Florida law, however, prohibits the School Board from entering into multi-year employment contracts with newly hired instructional personnel. *See* Fla. Stat. § 231.36(3)(e). In his deposition, Longariello testified that he "wasn't really looking for a guarantee" of multi-year employment, but he acknowledged that "that's the way [the School Board] may have taken it." (Longariello Dep., p. 92, DE 59, Ex. 6).

The undersigned concludes that Longariello has presented a *prima facie* case of gender discrimination only as to the Key Largo positions for the 1992–93 academic year. Because he has not demonstrated that he was qualified for the Emotionally Handicapped positions or that the School Board rejected him for the Varying Exceptionalities position, Longariello has failed to make a *prima facie* case as to the 1993–94 teaching positions.

█ With respect to the Key Largo 1992–93 positions, for which Longariello has made a *prima facie* case, the School Board has proffered a legitimate, non-discriminatory reason for not hiring Longariello; the School Board did not deem him to be the most qualified candidate for the Exceptional Child teaching positions. Principal St. James avers that throughout their interviews, the persons hired—Walker and Kickasola—both "demonstrated sensitivity to children, extraordinary enthusiasm, effective communication skills, sound judgment and effective strategies for classroom management." (St. James Aff., ¶ 6, DE 59, Ex. 1). She was impressed with Walker's and Kickasola's knowledge of education. (St. James Aff., ¶ 6, DE 59, Ex. 1).

▪ █ The School Board having proffered a legitimate, nondiscriminatory reason for not hiring Longariello, the Court's task now becomes "highly focused." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). It must "in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Id.* In making this determination, the Court is to "evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Id.* (quoting *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1072 (3rd Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997)). *See also Walker*, 53 F.3d at 1564 (discussing methods of proving pretext).

█ Beyond his own subjective perceptions, Longariello has presented no evidence from which a reasonable factfinder could conclude that the School Board failed to hire him for reasons other than stated—he was not the best qualified for the teaching positions. A plaintiff's "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination when [an employer] . . . has offered evidence of legitimate, nondiscriminatory reasons for its actions." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376–77 (11th Cir.1996)(quotations and citations omitted). As this Circuit has held, "[i]f an employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail." *Smith v. Horner*,

**1452**

839 F.2d 1530, 1538 (11th Cir.1988)(quoting *Clark v. Huntsville City Bd. of Education,* 717 F.2d 525, 527 (11th Cir.1983)). Accordingly, the School Board is entitled to summary judgment.

## IV.  *RECOMMENDATIONS*

Based on the foregoing, the undersigned RECOMMENDS that the School Board's Motion for Summary Judgment (DE 58) be GRANTED and that Longariello's Cross–Motion for Summary Judgment (DE 79) be DENIED.

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Norman C. Roettger, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice.  *See* 28 U.S.C. § 636(b)(1); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982)(en banc).